Edwin Aiwazian (Cal. State Bar No. 232943)
*edwin@calljustice.com*
Arby Aiwazian (Cal. State Bar No. 269827)
*arby@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
*joanna@calljustice.com*
Brian J. St. John (Cal. State Bar No. 304112)
*brian@calljustice.com*
Selena Matavosian (Cal. State Bar No. 348044)
*selena@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON FLETCHER, individually, and on behalf of other members of the general public similarly situated; KATRINA WILSON, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;<br><br>Plaintiffs,<br><br>vs.<br><br>TRIPLE B CORPORATION d/b/a CHARLIES PRODUCE, a Washington corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-03053-DMG-MAA<br><br>Honorable Dolly M. Gee<br>Courtroom 8C<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>[Supplemental Declaration of Proposed Class Counsel (Selena Matavosian); and [Proposed] Order filed concurrently herewith]<br><br>Complaint Filed: February 22, 2022<br>FAC Filed: February 16, 2024<br>Trial Date: None Set |

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Plaintiffs Cameron Fletcher and Katrina Wilson (together, "Plaintiffs") hereby submit the following supplemental brief in support of Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement ("Motion for Preliminary Approval") (Dkt. No. 26), in order to address the Court's points of inquiry in connection with the Motion for Preliminary Approval.

## I. INTRODUCTION

On November 17, 2023, Plaintiff filed the Motion for Preliminary Approval and supporting documents seeking preliminary approval of the Class Action and PAGA Settlement Agreement ("Settlement," "Agreement," or "Settlement Agreement")[1] entered into by Plaintiffs and Defendant Triple B Corporation d/b/a Charlies Produce ("Defendant") (together with Plaintiffs, the "Parties").

On February 8, 2024, the Court issued an In Chambers-Order Re: Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement (Dkt. No. 29) ("February 8, 2024 Order"), in which the Court raised five (5) points of inquiry with regards to the Motion for Preliminary Approval, requested additional information in support of the Motion for Preliminary Approval, and directed the Parties to file a stipulation and proposed order to file the [Proposed] First Amended Class Action Complaint for Damages and Enforcement Under the Private Attorneys General Act, Cal. Labor Code §2698 Et Seq ("First Amended Complaint" or "Operative Complaint").

## II. THE FILING OF THE FIRST AMENDED COMPLAINT

On February 15, 2024, the Parties filed a Joint Stipulation Granting Plaintiff Leave to File First Amended Complaint (Dkt. No. 30) ("February 15, 2024 Stipulation").

///

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Selena Matavosian in Support of Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement filed on November 17, 2023 (Dkt. No. 26-1) (and is herein cited to as "Settlement Agreement").

1

On February 16, 2024, the Court entered an Order (Dkt. No. 31), thereby granting the Parties' February 15, 2024 Stipulation.

On February 16, 2024, Plaintiffs filed the First Amended Complaint (Dkt. No. 32).

## III. THE COURT'S POINTS OF INQUIRY

### A. ADDITIONAL INFORMATION REGARDING VALUATION OF CLAIMS

By way of the February 8, 2024 Order, the Court requested as follows: "[T]he maximum monetary recovery that Plaintiff estimates could have been obtained on each claim if not for the proposed settlement, which of those claims were the basis for the proposed $1,610,000 Gross Settlement Amount, and why that amount should be considered 'fair, reasonable, and adequate' in light of the maximum potential recovery on the settled claims[.]" (February 8, 2024 Order, p. 1, ¶ 1.)

As set forth in the Declaration of Selena Matavosian in Support of Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement filed on November 17, 2023 (Dkt. No. 26-1) ("Declaration of Selena Matavosian" or "Matavosian Decl.") and the Supplemental Declaration of Selena Matavosian in Support of Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement filed concurrently with this brief ("Supplemental Declaration of Selena Matavosian" or "Suppl. Matavosian Decl."), and as discussed in the Motion for Preliminary Approval, both sides had the opportunity to interview witnesses and conducted significant informal discovery and investigation into the facts of the case. (Matavosian Decl., ¶ 13). Plaintiffs' counsel reviewed and analyzed a large volume of information, documents, and data obtained from Plaintiffs, Defendant, and other sources, including, but not limited to, a detailed sampling of Class Members' time and pay data and relevant operations and employment policies, practices, and procedures documents, researched applicable law, and undertook calculations of the value of the claims. (*Ibid*). Based on this investigation and analysis, Plaintiffs' counsel evaluated the potential value and merit of the claims and performed an

2

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

evaluation of Defendant's defenses thereto for purposes of negotiating a settlement. (Supp. Matavosian Decl., ¶ 7-12).

Plaintiffs' quantification of the value of the claims and *Kullar* analysis are set forth in the concurrently filed Supplemental Declaration of Selena Matavosian. (Supp. Matavosian Decl. ¶¶ 11.a-k.). As discussed therein, Plaintiffs' estimates of what could potentially be recovered warranted further discounting based on the risks involved, including, and not limited to, overcoming defense arguments, e.g., that the employer's practices, policies, and procedures complied with the law, that putative class members signed arbitration agreements with class action waivers, that it paid putative class members over the California minimum wage for all hours worked, that it correctly paid overtime for all overtime hours worked, that it had written policies and/or practices providing putative class members an opportunity to take compliant, uninterrupted meal periods and rest breaks, that it had valid written meal waivers, that it automatically paid meal period premiums, that no waiting-time penalties were due because waiting-time penalties only arise from "willful" failure to pay wages due and owing at the time of termination or resignation, that putative class members suffered no actual injury from the alleged wage statement violations and that the causes of action for untimely payment of wages, non-compliant wage statements, and the failure to maintain requisite payroll records are entirely derivative of the other causes of action, and that Defendant reimbursed employees for necessary business-related expenses, provided business cell phones for positions requiring cell phone use, and did not require employees to undertake expenses that were not reimbursed. (*Id.*, ¶ 10.) Plaintiffs further considered the likelihood of Plaintiffs' success in establishing that any of provisions of the California Labor Code, on which the California Business and Professions Code section 17200, *et seq.* claim is predicated, were violated and that such violations were injurious. (*Ibid.*) Importantly, Plaintiffs also considered the risks and expenses involved in satisfying class certification and manageability requirements, proving all of the elements of

each cause of action, the derivative nature of many of the claims, the costs and expenses of further litigation, and the real possibility of no recovery after years of litigation. (Matavosian Decl., ¶¶ 17-19; Supp. Matavosian Decl., ¶¶ 7-12.)

Defendant argued that the estimates of the value of the claims were overly ambitious and significantly inflated, asserting that there were multiple challenges to certification, representative adjudication, and the merits of the claims, including and not limited to, the key claims for overtime and minimum wages and non-compliant meal and rest periods. (Supp. Matavosian Decl., ¶ 10.) For example, Defendant contended that employees were required to record all hours worked, that it implemented policies and practices prohibiting off-the-clock work, and that it was not aware that work had been performed off-the-clock. (*Ibid*.) Defendant also contended that the non-compliant meal and rest period claims were meritless because putative class members were afforded the opportunity to take and did take duty-free meal and/or rest periods. (*Ibid*). Defendant further contended that any allegation that putative class members were forced to miss meal and rest periods, or take late, short, or interrupted ones, would require highly individualized questions of fact. (*Ibid*.) Defendant also contended that the job duties of putative class members varied, which raised highly individualized questions of fact. (*Ibid*.) Defendant further contended that variation as to the circumstances that could have caused the putative class members to work off-the-clock or experience a short, interrupted, late, or missed break (with or without Defendant's knowledge) presented potential challenges for certification. (*Ibid*.)

Plaintiffs and Plaintiffs' counsel have conducted extensive investigation and discovery in order to be sufficiently informed of the nature and extent of the class and PAGA claims, and to enable the Parties to fully evaluate the Settlement for its fairness, adequacy, and reasonableness. (Matavosian Decl., ¶ 22; Supp. Matavosian Decl., ¶ 13.) The Parties have agreed that the matter is well-suited for settlement given the legal issues relating to the claims, as well as the costs and risks to both

4

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

sides that would attend further litigation. (Matavosian Decl., ¶ 22.) The Settlement takes into account the strengths and weaknesses of each side's position, the uncertainty of how the case might have concluded at certification, trial, and/or appeal, and the risks to recovery. (Matavosian Decl., ¶ 22; Supp. Matavosian Decl., ¶ 13.)

Having the benefit of extensive investigation and informal discovery, interviews of Plaintiffs, as well as extensive information, data, and documents obtained from Plaintiffs, Defendant, and other sources, Plaintiffs recognize that if the litigation had continued, legal and factual hurdles might have been encountered that would pose significant risks to recovery as to the claims in the action. (Matavosian Decl., ¶ 18; Supp. Matavosian Decl., ¶¶ 7-12.) Although a number of cases have found wage-and-hour actions to be amenable to class treatment,[2] some

---

[2] See, e.g., *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 330-31 (Court successfully managed and adjudicated wage-and-hour claims made on behalf of a group of employees, utilizing, among other things, statistics and surveying.); *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1033 ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment [...] The theory of liability – that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment."); *Safeway v. Superior Court* (2015) 238 Cal.App.4th 1138, 1159 ("In our view, real parties demonstrated that the existence of the practice and the fact of damage were matters suitable for class treatment. Real parties' evidence supports the reasonable inference that in the context of a class action, they could establish that petitioners engaged in the alleged practice, that is, they never paid meal break premium wages, even though a significant number of employees accrued them. Furthermore, in view of real parties' theory of restitution, those facts would also suffice to demonstrate the fact of damage. Under that theory, the fact of damage does not require a showing that all -- or virtually all -- class members accrued unpaid meal break premium wages, but only that on a system-wide basis, petitioners denied the class members the benefits of the compensation guarantee and enhanced enforcement implemented by section 226.7."); *Martinez vs. Joe's Crab Shack Holdings, et al.* (2014) 231 Cal.App.4th 362, 383-84, *modified on other grounds by Martinez v. Joe's Crab Shack Holdings, et al.* (Dec. 3, 2014 B242807) 2014 Cal.App. LEXIS 1102, **1-2 (stating that difficult issues of proof do not vitiate the preference for efficient and effective means of resolving wage and hour claims, including misclassification and overtime, recognizing that "statistical sampling may provide assistance in identifying the realistic demands of the job and illuminating whether the typical employee was able to meet those expectations" and that "[b]y refocusing its analysis on the policies and practices of the employer and the effect those policies and practices have on the putative class . . . the trial court

*(Footnote continued)*

5

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

courts have found that, for various reasons, the issues raised here—off-the-clock work, unpaid wages, non-compliant meal periods, non-compliant rest periods, and unreimbursed business expenses—raise individualized issues and/or are unmanageable, and thus not suitable for adjudication on a class basis.[3]

Based on the risks involved and the costs and expenses of protracted litigation, and after a mediation conducted by a well-respected mediator experienced in mediating complex labor and employment matters, Plaintiffs and Plaintiffs' counsel concluded that it was in the best interests of the Class Members, Aggrieved Employees, and State of California to reach a settlement of the case. (Matavosian Decl., ¶ 12.) Plaintiffs' counsel submits that, based on all of the available information reviewed, the Settlement presented for preliminary approval is within a reasonable range of outcomes in light of all of the strengths and weaknesses of the claims at issue between the Parties.

Neither class certification, liability, damages, nor entitlement to monetary recovery is clear-cut, which is why the Parties elected to settle this matter. Plaintiffs'

---

may in fact find class analysis a more efficient and effective means of resolving plaintiffs' overtime claim"); *Tyson Foods, Inc. v. Bouaphakeo* (2016) 136 S.Ct. 1036 (holding that statistical evidence is admissible to support class action certification because it is also admissible to prove liability and damages across a class, where the defendant employer had not kept records of time spent by employees with respect to donning and doffing protective clothing).

[3] See, e.g., *Duran v. U.S. Bank Nat. Assn.* (2014) 59 Cal.4th 1, 25, 29, 31, and 34-35 (stating that even "[i]n wage and hour cases where a party seeks class certification based on allegations that the employer consistently imposed a uniform policy or de facto practice on class members, the party must still demonstrate that the illegal effects of this conduct can be proven efficiently and manageably within a class setting" and in litigating representative actions the procedures utilized by the court "may not be used to abridge a party's substantive rights," including "abridge[ing] [the defendant's] presentation of [a defense] simply because that defense was cumbersome to litigate," because of "principles of due process"); *Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1341 (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1018 (stating that employers must authorize, permit, or "relieve the employee of all duty for [a] designated meal [or rest] period," and "relinquish [full] control over [the employee's] activities" and "afford" employees an "opportunity to take an *uninterrupted* thirty-minute break," but are not obligated to affirmatively ensure that no work related tasks are performed during such periods).

counsel applied appropriate discounts in light of the defenses asserted, developments in the law, the facts and circumstances in this case, and the risks associated with certification. (Supp. Matavosian Decl., ¶¶ 7-12.) The risks included, and were not limited to, the costs and uncertainty of further litigating this case through trial and appeals, as well as consideration of the issues of, *inter alia*, whether each putative class member worked off-the-clock, whether each putative class member worked in excess of eight (8) hours in a day or forty (40) hours in a week, whether each putative class member was not properly compensated for all hours worked, whether each putative class member was not provided with compliant meal and rest periods, whether each putative class member incurred reimbursable expenses that were not reimbursed, whether Defendant knew or should have known about uncompensated work, and the derivative nature of the other claims asserted in this case. This Settlement resolves highly disputed claims and is the product of compromise. (Supp. Matavosian Decl., ¶ 13.)

**B. TREATMENT OF SIMILARLY-SITUATED CLASS MEMBERS**

By way of the February 8, 2024 Order, the Court inquired as follows:
"Whether the settlement treats similarly-situated Class Members similarly or if there are any Class Members receiving preferential or inferior treatment (*e.g.*, the pleaded Subclasses A, B, and C who will not recover additional funds for those claims under this Agreement)." (February 8, 2024 Order, p. 2, ¶ 2.)

The First Amended Complaint alleges the following putative class:
"All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." (Dkt. No. 32, p. 7, ¶ 15.)

Just like the original complaint filed in this case on February 22, 2022 in the Los Angeles County Superior Court, commencing the lawsuit, the First Amended Complaint continues to allege three potential subclasses that Plaintiffs could seek to certify, to an extent to be determined in the future based on facts and evidence

7

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

discovered, if the case were to be litigated, namely:

> "(Subclass A) All class members who received overtime compensation at a rate lower than their respective regular rate of pay because Defendants failed to include all non-discretionary bonuses or other incentive-based compensation in the calculation of the regular rate of pay for overtime pay purposes.
>
> (Subclass B)  All class members who were subject to Defendants' practice of rounding time recorded for purposes of calculating compensation for time worked or for calculating meal periods.
>
> (Subclass C)  All class members who were required by Defendants to stay on Defendants' premises for rest breaks."  (Dkt. No. 32, p. 7, ¶ 15.)

The subclasses were alleged in the original complaint, and continue to be alleged in the First Amended Complaint, to put Defendant (and others who may review the operative pleading in the case, e.g., Class Members) on notice of what the claims and allegations entail of, and to assist in tailoring discovery and motion practice in the event the case were to be litigated.  It is possible that, if the case were to continue to be litigated, depending on the facts and evidence developed through discovery and litigation, Plaintiffs would focus on seeking certification of a particular subclass as opposed to others.

The Settlement Agreement defines "Class Members" as "all current and former hourly-paid, non-exempt employees who worked for Defendant within the State of California at any time during the Class Period." (Settlement Agreement, ¶ 1.8.)  Further, the Settlement Agreement provides that the "Settlement Administrator will divide the Net Settlement Amount by the Workweeks of all Class Members to yield the "Estimated Workweek Value," and multiply each Class Member's individual Workweeks by the Estimated Workweek Value to yield their Individual Settlement Share."  (Settlement Agreement, ¶ 6.6.1.)

Although the First Amended Complaint alleges potential subclasses that Plaintiffs may seek to certify in the event that Plaintiff were to litigate this case instead of settle the case, the Settlement Agreement does not distinguish between

said potential subclasses. The distribution formula for Individual Settlement Payments treats all Class Members similarly because it determines each payment based on each Class Member's individual Workweeks and no Class Member is receiving any inferior treatment over another Class Member. Based on Plaintiffs and Plaintiffs' Counsel's investigations, the issues of how the regular rate of pay was calculated for purposes of overtime pay or the rounding of time for purposes of calculating compensation for time worked or for calculating meal periods or staying on premises for rest breaks, are not unique to any particular subset of putative class members, thus there are no subgroups of Class Members who should recover additional funds compared to others. Thus, the Settlement is fair, reasonable, and adequate because of the equal distribution method which treats all Class Members similarly.

### C. PLAINTIFF KATRINA WILSON'S SERVICE AWARD

By way of the February 8, 2024 Order, the Court inquired as follows: "[W]hy Wilson should be entitled to the same Class Representative Service Award as Fletcher despite having joined the case much later and spent significantly fewer hours on it." (February 8, 2024 Order, p. 2, ¶ 3.)

Plaintiff Cameron Fletcher ("Plaintiff Fletcher") started employment with Defendant in June 2018, and his employment ended in November 2019. (Declaration of Brandy Jesse, ¶ 5.) Plaintiff Katrina Wilson ("Plaintiff Wilson") started employment with Defendant in November 2018, and *she is a current employee of Defendant*. (Declaration of Brandy Jesse, ¶ 6.)

Plaintiff Wilson commenced the Private Attorneys General Act ("PAGA") action and initiated claims different than Plaintiff Fletcher, who initiated the class action claims. Further, as a current employee, Plaintiff Wilson has provided crucial facts and information (and will continue to be able to provide such facts and information) regarding the putative class claims and experience of current employees; information that is different from what Plaintiff Fletcher could provide

as a former employee of Defendant since his employment ended in November 2019. Although Plaintiff Wilson has not been involved in the lawsuit as long as Plaintiff Fletcher, as a current employee, Plaintiff Wilson brought updated information about the current situation of employees at Charlies Produce. Thus, Plaintiff Wilson's contributions are *qualitatively* no lesser than those of Plaintiff Fletcher, although, *quantitatively*, Plaintiff Fletcher has been involved in the lawsuit longer. As such, it is fair to award Plaintiffs the same amount of Service Award.

### D. WHETHER THE RELEASE APPLIES TO FAIR LABOR STANDARDS ACT CLAIMS

By way of the February 8, 2024 Order, the Court inquired as follows: "Whether the Agreement's broad release is intended to apply to any Class Members' Fair Labor Standards Act ("FLSA") claims, and if so, why that would be permissible under Ninth Circuit law, *see Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp 3d 959, 967-68 (N.D. Cal. 2019) (broad discussion of FLSA releases in class action settlements)." (February 8, 2024 Order, p. 2, ¶ 4.)

In negotiating the Settlement Agreement and release of claims, Defendant strongly contended and the Parties agreed that the release of claims will have *res judicata* effect on all claims reasonably related to or arising out of the factual allegations in the Operative Complaint, including any claim involving the same factual predicate. The Parties respectfully submit that the scope of the release of claims in the Settlement Agreement is permissible under applicable federal law regarding claim preclusion. See *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987-88 (9th Cir. 2005) (setting forth elements of *res judicata* and explaining this court's transaction test used to determine whether two suits share a common nucleus of operative fact); *Tahoe Sierra Preservation Council, Inc. v. Tahoe Reg. Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been

brought in the earlier action."); *Int'l Union of Operating Engineers-Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) (collecting cases using the same nucleus of operative facts as the exclusive factor to bar a second action under the claim preclusion doctrine); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action." (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133–34 (9th Cir. 2008))).

As the Settlement does not request certification and approval of a collective action settlement under the FLSA, the Settlement can be distinguished from *Haralson v. U.S. Aviation Servs. Corp*, 383 F. Supp. 3d 959, 964-65 (N.D. Cal. 2019) (in moving for preliminary approval of a settlement, the settling parties *also sought* certification and approval of an FLSA collective action settlement with a claims-made collective action settlement procedure).

### E. ADDITIONAL INFORMATION REGARDING DEFENDANT AND THE WORKFORCE

By way of the February 8, 2024 Order, the Court requested additional information regarding the nature of Defendant's operations in California, the number of locations and/or plants where Class Members worked, the different job titles or classifications included in the proposed Class, and whether Class Members were paid on a piece-rated basis during the Class Period (February 8, 2024 Order, p. 2, ¶ 4.) The information requested by the Court is now provided by way of the Declaration of Brandy Jesse that is filed concurrently with this brief. The declaration explains that Defendant is a full-service wholesale produce company that maintained three (3) locations in California during the time period in question, namely, a warehouse in Irwindale, a farm in San Juan Batista (Jardines), and a distribution

center in San Juan Batista (Coke Farm). (Declaration of Brandy Jesse, ¶ 2.) The declaration also explains that, during the time period in question, there were approximately twenty-one (21) job classifications at the Irwindale location, approximately six (6) job classifications at Jardines in San Juan Batista, and approximately eight (8) job classifications at Coke Farm in San Juan Batista. (*Id*., ¶ 3.) The declaration further explains that, during the time period in question, Defendant did not pay non-exempt employees on a piece-rate basis. (*Id*., ¶ 4.)

## IV. CONCLUSION

Having addressed the Court's points of inquiry, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement; certify the Class for settlement purposes; appoint and designate Lawyers *for* Justice, PC as Class Counsel; appoint and designate Plaintiffs Cameron Fletcher and Katrina Wilson as Class Representative; appoint Simpluris, Inc as the Settlement Administrator; preliminarily approve the plan of allocation and distribution of funds, including but not limited to, the allocations for the Class Counsel Award, Service Award, PAGA Allocation, and Administrative Costs; approve the proposed Notice of Class and Representative Action Settlement; direct the Settlement Administrator to undertake the notice and settlement administration process in conformity with the deadlines and procedures provided by the Settlement Agreement; and schedule a Final Approval Hearing to take place approximately six (6) months after the Court enters an order preliminarily approving the Settlement

Respectfully submitted,

**LAWYERS *for* JUSTICE, PC**

_____
Joanna Ghosh
Selena Matavosian
*Attorneys for* Plaintiff

12
**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**