Arby Aiwazian (Cal. State Bar No. 269827)
  *arby@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
  *joanna@calljustice.com*
Selena Matavosian (Cal. State Bar No. 348044)
  *selena@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON FLETCHER, individually, and on behalf of other members of the general public similarly situated; KATRINA WILSON, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;<br><br>Plaintiffs,<br><br>vs.<br><br>TRIPLE B CORPORATION d/b/a CHARLES PRODUCE, a Washington corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-3053-DMG-MAA<br><br>Honorable Dolly M. Gee<br>Courtroom 8C<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Supplemental Declaration of Settlement Administrator (Gillian McCreedy); and [Proposed] Order Granting Final Approval of Class Action and PAGA Settlement and Judgment filed concurrently herewith]<br><br>Date: December 6, 2024<br>Time: 10:00 a.m.<br>Courtroom: 8C<br><br>Complaint Filed: February 22, 2022<br>FAC Filed: February 16, 2024<br>Trial Date: None Set |

**PLEASE TAKE NOTICE** that on December 6, 2024 at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Dolly M. Gee, in Courtroom 8C of the United States District Court for the Central District of California, located at First Street Courthouse, 350 West First Street, Los Angeles, California 90012, Plaintiffs Cameron Fletcher and Katrina Wilson ("Plaintiffs" or "Class Representatives") will and hereby do move for an order granting final approval of:

1. The proposed class action settlement described herein and as set forth in the Class Action and PAGA Settlement Agreement ("Settlement," "Agreement," or "Settlement Agreement") on the grounds that the Settlement is fair, adequate, and reasonable because:

- A Net Settlement Amount of approximately **$920,665.35** will be fully distributed to Class Members who do not submit a valid and timely Request for Exclusion ("Settlement Class Members");
- **No Objections** were submitted to the settlement administrator, Simpluris, Inc. ("Settlement Administrator" or "Simpluris");
- **No Requests for Exclusion** were submitted to the Settlement Administrator;

2. Allocation for the penalties under the California Labor Code Private Attorneys General Act of 2004, Labor Code section 2698, et seq. ("PAGA"), in the amount of $75,000.00, of which seventy-five percent (75%), or **$56,250.00**, will be paid to the California Labor and Workforce Development Agency ("LWDA Payment"), and twenty-five percent (25%), or **$18,750.00**, will be distributed to the Aggrieved Employees on a *pro rata* basis based on their PAGA Workweeks ("Aggrieved Employees' Portion").

This motion is based upon the following Memorandum of Points and Authorities and the Supplemental Declaration of Settlement Administrator (Gillian McCreedy of Simpluris) in support thereof; the pleadings and other records on file

with the Court in this matter; and such evidence and oral argument as may be presented at the hearing on this Motion.

Dated: November 15, 2024

**LAWYERS *for* JUSTICE, PC**

By: _____
Selena Matavosian
*Attorneys for* Plaintiff and the Class

# TABLE OF CONTENTS

I. SUMMARY OF MOTION ............................................................................................1

II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND ...............................2

III. SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF DISTRIBUTION..3

IV. THE SETTLEMENT ADMINISTRATION PROCESS ..............................................5

V. THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT..............................................................................................................7

    A. The Settlement Resulted from Arm's-Length Negotiations Based Upon Extensive Investigation and Discovery. ...............................................................8

    B. The Risks Inherent in Continued Litigation Favor Final Approval of the Settlement. ..........................................................................................................11

    C. The Settlement Is Fair, Reasonable, and Adequate.............................................13

    D. The Class Was Represented by Competent Counsel..........................................14

    E. There Are No Objections to the Settlement. ......................................................15

VI. CONCLUSION ...........................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135 ........ 8, 15

*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 ....................................................................... 7, 8

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 ........................................................ 7, 8, 15

*In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y. 2001) 127
  F.Supp.2d 418 ..................................................................................................................... 14

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 .................................................. 8, 15

**Other Authorities**

Conte & Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47 ........................................ 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF MOTION

Plaintiffs Cameron Fletcher and Katrina Wilson (together, "Plaintiffs") seek final approval of the Class Action and PAGA Settlement Agreement (together, "Settlement," "Agreement," or "Settlement Agreement"), entered into by and between Plaintiffs and Defendant Triple B Corporation d/b/a Charles Produce ("Defendant") (collectively with Plaintiffs, the "Parties").[1]

The Settlement provides for a Gross Settlement Amount of $1,610,000.00 to be distributed to the following Class:

> [A]ll current and former hourly-paid, non-exempt employees who worked for Defendant within the State of California at any time during the Class Period ("Class Members"). Settlement Agreement, ¶ 1.8.

Plaintiffs move for final approval of all payments allocated and provided for by the Settlement, to be paid from the Gross Settlement Amount, including and not limited to, Service Awards in the amounts of $10,000.00 each to Plaintiffs (for a total of $20,000.00), attorneys' fees in the amount of $563,500.00, which is thirty-five percent (35%) of the Gross Settlement Amount, and reimbursement of litigation costs and expenses in the amount of $17,834.65 (together, "Class Counsel Award") to Lawyers *for* Justice, PC ("Class Counsel"), Administrative Costs in the amount of $13,000.00 to Simpluris, Inc. ("Simpluris" or "Settlement Administrator")[2], and $75,000.00 allocated to penalties under the Private Attorneys General Act ("PAGA Allocation"), of which $56,250.00 will be paid to the California Labor and Workforce Development Agency ("LWDA") for its portion of the PAGA Allocation ("LWDA Payment"), and $18,750.00 will be distributed to all current and former

---

[1] A copy of the fully-executed Settlement Agreement is attached as "EXHIBIT 1" to the Declaration of Selena Matavosian in Support of Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement (Docket No. 26-1).

[2] In the interest of judicial efficiency, and in support of the allocations and requests for the Class Counsel Award, Service Awards, and Administrative Costs, Plaintiffs respectfully refer the Court to Plaintiffs' Motion for Class Counsel Award, Service Awards, and Administrative Costs, and papers in support thereof, filed on September 30, 2024.

1

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

hourly-paid or non-exempt employees who worked for Defendant within the State of California at any time during the PAGA Period ("Aggrieved Employees") on a *pro rata* basis ("Aggrieved Employees' Portion") based on the total number of PAGA Workweeks worked by each Aggrieved Employee during the period November 14, 2022 through August 15, 2023 ("PAGA Period"). Settlement Agreement, ¶¶ 1.2, 1.3, 1.4, 1.7, 1.24, 1.31, 1.32, & 1.44. The Net Settlement Amount is the amount available for distribution to Class Members who do not submit a valid and timely Request for Exclusion ("Settlement Class Members"). *Id.*, ¶ 1.46.

The Settlement is fair, adequate, and reasonable, and is the product of arm's-length, good-faith negotiations by experienced counsel, presided over by a highly-regarded mediator who is experienced in mediating wage-and-hour class action lawsuits. Most importantly, as of the date of this Motion, *not a single Class Member has objected to any aspect of the Class Settlement, including the requested Class Counsel Award, Service Awards, Administrative Costs, or the allocation for the PAGA Allocation – nor have any Class Members requested to be excluded from the Class Settlement.*

Accordingly, the Court should grant final approval of the Settlement, and all payments allocated and provided for by the Settlement Agreement, including and not limited to the PAGA Allocation.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

For a discussion on relevant procedural history and facts regarding this case, please see the Declaration of Joanna Ghosh in Support of Plaintiffs' Motion for Final Approval of Class Counsel Award, Service Awards, and Administrative Costs ("Ghosh Decl.") at paragraphs 2 to 22, filed on September 30, 2024 (Docket No. 43-1).

On September 30, 2024, Plaintiffs filed the Motion for Class Counsel Award, Service Awards, and Administrative Costs ("Motion for Fees"), along with supporting documentation (Docket Nos. 43, 43-1, 43-2, 43-3, 43-4, & 43-5).

Plaintiffs now move for final approval of the Settlement and the amount for the PAGA Allocation, and for approval of the requested Class Counsel Award, Service Awards, and Administrative Costs, as set forth in the Motion for Fees filed on September 30, 2024.

## III. SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF DISTRIBUTION

Under the terms of the Settlement Agreement, Defendant has agreed to pay a Gross Settlement Amount of $1,610,000.00. Settlement Agreement, ¶ 1.20. Subject to approval by the Court, the Net Settlement Amount will be calculated by deducting the Class Counsel Award, Service Awards, Administrative Costs, and the PAGA Allocation. *Id.*, ¶¶ 1.2, 1.7, 1.31, & 1.44. In the event the allocations towards each of these categories are awarded in full, the Net Settlement Amount that will be distributed to Settlement Class Members is estimated to be at least $920,665.35, and there is no reversion to Defendant.[3] *Id.*, ¶ 1.46. The entire Net Settlement Amount will be distributed to Settlement Class Members based upon their respective number of Workweeks during the Class Period and the entire PAGA Allocation will be distributed as seventy-five percent (75%) to the LWDA for the LWDA Payment and twenty-five percent (25%) to Aggrieved Employees. *Id.*, ¶¶ 1.31, 6.5, & 6.6.

Settlement Class Members will be paid from the Net Settlement Amount on a *pro-rata* basis based upon the number of weeks in which a Class Member performed work for Defendant, as reflected on Defendant's time records, as an hourly-paid, non-exempt employee of Defendant within the State of California ("Workweeks"). Settlement Agreement, ¶ 1.47. After final approval of the Settlement, the Settlement Administrator will divide the final Net Settlement Amount by the Workweeks of all Settlement Class Members to yield the "Final Workweek Value," and multiply each

---

[3] This amount is higher than the $913,500.00 amount stated in Paragraph 16 of the Declaration of Gillian McCreedy Regarding Notice and Settlement Administration ("Simpluris Declaration" or "Simpluris Decl."), filed on September 30, 2024 (Docket No. 43-2), because the Settlement Administrator's calculation assumes that Class Counsel will obtain litigation costs and expenses in the maximum allocated amount of $25,000.00. However, Class Counsel seeks the amount of only $17,834.65 for reimbursement of litigation costs and expenses, and the difference of $7,165.35 will remain part of the Net Settlement Amount.

3

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Settlement Class Member's individual Workweek by the Final Workweek Value to yield their Individual Settlement Share. *Id*., ¶ 6.6.2.

Aggrieved Employees will be paid a *pro rata* share of the Aggrieved Employees' Portion ("Individual PAGA Payment"), which will be calculated based on the number of weeks each Aggrieved Employee worked for Defendant as an hourly-paid or non-exempt employee who worked for Defendant within the State of California at any time during the PAGA Period ("PAGA Workweeks"). Settlement Agreement, ¶¶ 1.20 & 1.34. Individual PAGA Payments will be calculated as follows: The Settlement Administrator will divide the Aggrieved Employees' Portion by the PAGA Workweeks of all Aggrieved Employees to yield the "Estimated PAGA Workweek Value," and multiply each Aggrieved Employee's individual PAGA Workweeks by the Estimated PAGA Workweek Value to yield their Individual PAGA Payment. *Id*., ¶ 6.7.1.

Class Members had sixty (60) calendar days from the initial mailing of the Notice of Class and Representative Action Settlement ("Class Notice") by the Settlement Administrator ("Response Deadline") to submit a Request for Exclusion, Objection, and/or Dispute. Settlement Agreement, ¶ 1.42. In the event that a Class Notice was re-mailed to a Class Member, the Response Deadline for that Class Member shall be extended by fifteen (15) calendar days from the original Response Deadline. Ibid. The Response Deadline was October 25, 2024. Supplemental Declaration of Gillian McCreedy Regarding Notice and Settlement Administration ("Supplemental Simpluris Declaration" or "Supp. Simpluris Decl."), ¶ 5. As of the date of this motion, the Settlement Administrator has not received any Requests for Exclusion, Notices of Objection, or Disputes. *Id*., ¶¶ 6-8.

All Individual Settlement Shares will be allocated as follows: ten percent (10%) as wages and ninety percent (90%) as non-wage penalties and interest. Settlement Agreement, ¶ 6.8.2. The portion allocated to wages will be reported on an IRS Form W-2 and the portions allocated to non-wage penalties and interest will

be reported on an IRS Form 1099 by the Settlement Administrator. Ibid. The Settlement Administrator will withhold the Employer Taxes and employee's share of taxes and withholdings with respect to the wages portion of the Individual Settlement Share, and issue checks to Settlement Class Members net of these taxes and withholdings. *Id*., ¶¶ 6.8.3 & 6.8.4. The Settlement Administrator will account for the wages portion of each Individual Settlement Share and submit an invoice to Defendant for the required Employer Taxes, which Defendant shall pay in addition to the Gross Settlement Amount. *Id.*, ¶ 6.8.4. All Individual PAGA Payments will be allocated as one hundred percent (100%) to civil penalties for which an IRS Form 1099 will be issued (if applicable), and the Settlement Administrator will not undertake any tax withholding with respect to the Individual PAGA Payments. *Id*., ¶ 6.8.1.

All Individual Settlement Payment and Individual PAGA Payment checks will remain valid and negotiable for one hundred and eighty (180) calendar days from the date of their original mailing ("Expiration Date"). Settlement Agreement, ¶ 6.9. Approximately thirty (30) calendar days before the end of the Expiration Date, the Settlement Administrator will send a postcard or email notification to the Settlement Class Members and/or Aggrieved Employees who have not cashed, deposited, or otherwise negotiated their checks to remind them of the deadline. Ibid. After the Expiration Date, the checks shall be cancelled and funds from all cancelled checks shall be transmitted by the Settlement Administrator to the California State Controller's Unclaimed Property Division in the name of the Settlement Class Member and/or Aggrieved Employee and in the amount of their respective Individual Settlement Payment and/or Individual PAGA Payment. Ibid.

## IV.   THE SETTLEMENT ADMINISTRATION PROCESS

The Court-appointed Settlement Administrator, Simpluris, has taken all necessary steps to effectuate the notice and settlement administration process, as set forth in the Court's Order Granting Preliminary Approval of Class Action Settlement

(Docket No. 41).

On July 31, 2024, Simpluris received the Court-approved Class Notice. Simpluris Decl., ¶ 4. On August 2, 2024, Defendant's counsel provided Simpluris with a list of each Class Member's full name, last known email address (if available in Defendant's records), last known mailing address, last known telephone number, Social Security number, and the number of Workweeks and PAGA Workweeks, if applicable, based Defendant's time records for Class Members and Aggrieved Employees (collectively, "Class Data"). *Id*., ¶ 5. The Class Data contained data for eight hundred and thirty-nine (839) individuals. Ibid. Simpluris processed and updated the names and addresses through the National Change of Address Database ("NCOA") and updated the Class Data with any updated addresses located. *Id*., ¶ 7. Simpluris was able to locate ninety-one (91) updated addresses using NCOA prior to the mailing of the Class Notice. Ibid.

On August 26, 2024, Simpluris mailed the Class Notice via first class mail in English and Spanish to eight hundred and thirty-nine (839) individuals identified as Class Members and/or Aggrieved Employees. Simpluris Decl., ¶ 8.

As of the date of this Motion, eighty (80) Class Notices were returned to Simpluris. Supp. Simpluris Decl., ¶ 4. Of these, one (1) was returned with a forwarding address and remailed to the updated address. Ibid. If a Class Member's Class Notice was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses by using Accurint. Ibid. Through advanced address searches, Simpluris was able to locate fifty-six (56) updated addresses and Simpluris promptly mailed a Class Notice to those updated addresses. Ibid. Ultimately, twenty-three (23) mailed Class Notices remain undeliverable. Ibid.

The deadline for Class Members to submit a Request for Exclusion, Objection, or Dispute was October 25, 2024. Supp. Simpluris Decl., ¶ 5. The Settlement Administrator has received zero (0) Requests for Exclusion, Objections, and/or

6

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Disputes from Class Members. *Id.*, ¶¶ 6, 7, & 8.

As of the date of this Motion, there are eight hundred and thirty-nine (839) individuals who did not submit a valid and timely Requests for Exclusion, and are therefore, deemed to be Settlement Class Members. Supp. Simpluris Decl., ¶ 9. Pursuant to the terms of the Settlement, the Net Settlement Amount of approximately $920,665.35 will be distributed to Settlement Class Members in accordance with the terms of the Settlement. *Id.*, ¶ 10.[4] Of the (839) Settlement Class Members, one hundred and eighty-three (183) are also Aggrieved Employees who will also be paid out of the Aggrieved Employees' Portion. Ibid. The *highest* Individual Settlement Payment is currently estimated to be at least $5,575.81 and the *average* Individual Settlement Payment is currently estimated to be at least $1,088.80. *Id.*, ¶ 11.[5] The *highest* Individual PAGA Payment is currently estimated to be at least $158.33 and the *average* Individual PAGA Payment is currently estimated to be at least $102.46. *Id.*, ¶ 13.

## V. THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT.

The trial court has broad discretion to determine whether a class action settlement is fair and reasonable. *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 52. To determine whether the settlement is fair and reasonable, courts consider relevant factors such as:

> the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement.

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801. "The list of factors is

---

[4] See n.3, *supra*.

[5] The actual average and highest Individual Settlement Payment will be larger than the amounts stated in the Supplemental Simpluris Declaration because the Net Settlement Amount is larger due to Class Counsel's request for reimbursement of litigation costs and expenses in an amount that is less than $25,000.00 (the difference between the amount sought and the amount authorized under the Settlement, i.e., $7,165.35, will be part of the Net Settlement Amount). See n.3, *supra*.

not exclusive and the court is free to engage in a balancing and weighing of the factors depending on the circumstances of each case." *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245. "Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, *supra*, 48 Cal.App.4th at 1801.

The proponent of the settlement has the burden to show that it is fair and reasonable. *Wershba*, *supra*, 91 Cal.App.4th at 245. At the final approval stage, a presumption of fairness exists where, as here: "(1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." *Dunk*, *supra*, 48 Cal.App.4th at 1802. In reviewing a class settlement, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute. *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1146. The inquiry is not whether the settlement agreement is the best one that class members could have possibly obtained, but whether the settlement, taken as a whole, is "fair, adequate, and reasonable." *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 55. A settlement need not obtain 100 percent of the damages sought in order to be fair, reasonable, and ultimately, meaningful. *Wershba*, *supra*, 91 Cal.App.4th at 251. Even if the proposed settlement affords relief that is substantially narrower than it would be if the cases were to be successfully litigated, that is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding prolonged litigation. *Id*.

### A. The Settlement Resulted from Arm's-Length Negotiations Based Upon Extensive Investigation and Discovery.

The Parties actively litigated the case since it commenced on February 22, 2022. Class Counsel conducted significant investigation and informal discovery into

the facts of the case, to assess the veracity, strength, and scope of the claims, and was preparing the matter for class certification and trial prior to reaching the Settlement. Ghosh Decl., ¶ 25.

The parties conducted significant investigation and informal discovery and investigation into the facts of the case, and reviewed and analyzed a large volume of information, data, and documents obtained from Plaintiffs, Defendant, and other sources, in the course of litigation and in connection with mediation and settlement negotiations. Ghosh Decl., ¶ 25. The Parties agreed to engage in, and did engage in, extensive informal discovery through the exchange of information and documents. Ibid. The information, documents, and data reviewed and analyzed by Class Counsel included, and were not limited to, approximately 97% of Class Members' time and pay data. Ibid. Class Counsel developed liability, damages, and penalties valuation models in the course of litigation and in connection with mediation and settlement negotiations, and met and conferred with Defendant's counsel on numerous occasions, e.g., to discuss issues relating to the pleadings, case management, discovery, jurisdiction, and production of information, documents, and data in the course of litigation and in connection with the mediation and settlement negotiations, and mediation and settlement. Ibid. Other work performed by Class Counsel included, and was not limited to, case strategy and analysis; drafting, reviewing, and revising the pleadings, motion-related papers, the mediation brief, and settlement documents; and preparing for and attending court proceedings and mediation and settlement negotiations, among other tasks. Ibid.

After conducting significant investigation into the facts and law during the prosecution of the case, counsel for the Parties engaged in extensive settlement negotiations to try to resolve the case. Ghosh Decl., ¶ 27. These efforts included participating in a formal, full-day mediation conducted by Mark S. Rudy, Esq., a well-regarded mediator experienced in mediating complex labor and employment matters. Ibid. In the course of mediation and settlement negotiations, the Parties

exchanged information, documents, and data, and discussed all aspects of the case, including and not limited to, the risks and delays of further litigation, the risks to the Parties of proceeding with class certification and/or representative adjudication, the law relating to class certification, manageability, off-the-clock theory, rounding, regular rate of pay, meal and rest periods, representative PAGA claims, wage-and-hour law and enforcement, as well as the evidence produced and analyzed, and the possibility of appeals, among other things. Ibid. During all settlement discussions, the Parties conducted their negotiations at arm's length in an adversarial position. Ibid. Arriving at a settlement that was acceptable to the Parties was not easy. *Ibid.* Defendant contended that individualized questions of fact predominate over any common issues, and these issues would pose challenges to class certification and representative adjudication. Ibid. Defendant and its counsel felt strongly about Defendant's ability to avoid class certification and representative adjudication and prevail on the merits. Ibid. Plaintiffs and Class Counsel believe that they would be able to obtain class certification and prevail at trial. Ibid. With the aid of the mediator's evaluation, the Parties ultimately agreed that the case was well-suited for settlement given the legal issues relating to principal claims in the case, as well as the costs and risks to the Parties that would attend further litigation. Ibid. These risks of further litigation include, and are not limited to, a determination that the claims are unsuitable for class treatment and/or representative adjudication, class de-certification after certification of a class, allowing a jury to decide the claims asserted in the case, and the real possibility of no monetary recovery after years of litigation. Ibid.

The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals. Class Counsel analyzed a large amount of information, data, and documents obtained from Plaintiffs, Defendant, and other sources, that provided a critical understanding of the nature of the work performed by the Class Members,

as well as Defendant's operations and employment policies, practices, and procedures. Ghosh Decl., ¶ 26. The information, documents, and data were used in analyzing liability, damages, penalties, and valuation issues in connection with all phases of the litigation, and ultimately in connection with the mediation and settlement negotiation process. Ibid. Class Counsel also performed research regarding applicable law, which is evolving as it relates to class certification, manageability, off-the-clock theory, rounding, regular rate of pay, meal and rest periods, representative PAGA claims and penalties, wage-and-hour law and enforcement, Plaintiffs' claims and allegations, and Defendant's defenses thereto, as well as facts discovered. Ibid. The Settlement reached was based on this large volume of facts, evidence, and investigation. *Id*., ¶¶ 25-27. Additionally, Class Counsel has extensive experience in handling complex wage-and-hour matters, including significant experience in employment class action litigation. *Id*., ¶¶ 32-37.

### B. The Risks Inherent in Continued Litigation Favor Final Approval of the Settlement.

The Settlement, which provides for a Gross Settlement Amount of $1,610,000.00, represents a fair, adequate, and reasonable resolution of the case, given the risks inherent in litigating class and representative claims through certification proceedings, trial, and/or appeals. Ghosh Decl., ¶¶ 29 & 40. The Settlement was calculated using information and data uncovered through extensive case investigation, informal discovery, and the exchange of information in the context of preparing for mediation and ongoing settlement negotiations. *Id*., ¶¶ 24-27. Had the action not settled, Defendant would have vigorously challenged class certification, manageability of representative adjudication, and liability. Defendant contended that individualized questions of fact predominated over any common issues, and these issues would pose challenges to certification and representative adjudication. Defendant would have likely argued again at trial, if any, that Plaintiffs' claims were not appropriate for class-wide and/or representative

adjudication. On the other hand, Defendant also faced the risk of the Court certifying a class and allowing a jury to decide Plaintiffs' claims on a class-wide or representative basis. Additionally, preparation for trial would have been expensive for all parties.

It is preferable to reach an early resolution of a dispute because such resolutions save time and money that would otherwise go to litigation. If this matter had settled after further litigation, the settlement amount would have taken into account the additional costs incurred, and there might have been less money available for Class Members after all was said and done. This is not just an abstract contention. The risks and expenses of further litigation outweighed any benefit that might have been gained otherwise. These risks of further litigation include a determination that the claims were unsuitable for class treatment and/or representative adjudication, class de-certification after certification of a class, allowing a jury to decide the claims asserted in the case, and the real possibility of no recovery after years of litigation. Additionally, the Parties were moving into the phase of the litigation where they would have to conduct a significant amount of additional discovery, including and not limited to, depositions of Defendant's Person Most Knowledgeable designees, expert witnesses, and percipient witnesses, such as managers, supervisors, and other current and former employees throughout the State of California. Discovery disputes would have certainly arisen, which would have cost the parties additional time and money. In contrast, the Settlement provides real and significant benefits for the Class here and now, while avoiding the further expenses, risks, and delay of prolonged litigation with only the possibility of recovery.

It would be grossly inefficient for such a large class of current and former employees to bring individual actions to recover from Defendant for the alleged violations of wage-and-hour laws. Moreover, the potential individual recovery that could be obtained by a Class Member would not be significant enough to provide

12

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

him or her with the incentive to sue. By granting final approval of the Settlement, the Court can approve a resolution that provides a certain and substantial recovery for Class Members and the State of California.

### C.   The Settlement Is Fair, Reasonable, and Adequate.

The Settlement, which provides for a Gross Settlement Amount of $1,610,000.00, represents a fair, reasonable, and adequate resolution of the case. The Settlement was calculated using information and data uncovered through extensive case investigation, informal discovery, and the exchange of information in the context of preparing for mediation and conducting ongoing settlement negotiations. The Settlement takes into account the potential risks and rewards inherent in any case and, in particular, in this case. Moreover, considering all of the facts in the case, the Gross Settlement Amount represents a considerable recovery.

Even after deducting attorneys' fees in the amount of $563,500.00, litigation costs and expenses in the amount of $17,834.65, Service Awards in the amount of $10,00.00 to each Plaintiffs Cameron Fletcher and Katrina Wilson (for a total of $20,000.00), Administrative Costs in the amount of $13,000.00, and the PAGA Allocation in the amount of $75,000.00 from the Gross Settlement Amount of $1,610,000.00, as provided for by the Settlement, the Net Settlement Amount is currently estimated to be $920,665.35.[6] The entire Net Settlement Amount will be distributed to Settlement Class Members based upon their number of Workweeks during the Class Period, and the entire PAGA Allocation will be distributed as seventy-five percent (75%) to the LWDA and twenty-five percent (25%) to Aggrieved Employees based on their PAGA Workweeks during the PAGA Period, and no portion of the Gross Settlement Amount shall revert to Defendant. Settlement Agreement, ¶ 1.31. To date, there are eight hundred and thirty-nine (839) Settlement Class Members, and one hundred and eighty-three (183) Aggrieved Employees. Supp. Simpluris Decl., ¶ 9. The *highest* Individual Settlement Payment is currently

---

[6] See n.3, *supra*.

estimated to be at least $5,575.81 and the *average* Individual Settlement Payment is currently estimated to be at least $1,088.80. *Id.*, ¶ 11.[7] The *highest* Individual PAGA Payment is currently estimated to be at least $158.33 and the *average* Individual PAGA Payment is currently estimated to be at least $102.46. *Id.*, ¶ 13. The Individual Settlement Payment is subject to reduction for the employee taxes and withholdings. These are significant individual recoveries, particularly in light of the risks of litigation.

At the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel." *In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429-30. The *pro rata* allocation here is a fair and reasonable way to distribute the Net California Settlement Amount. In light of the above considerations, Class Counsel believes that the Settlement as a whole is fair, reasonable, and adequate, and in the best interest of the Class Members and the State of California. Ghosh Decl., ¶ 21. Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations into account, particularly if Class Counsel appears to be competent, has experience with this type of litigation, and significant discovery and investigation have been completed, as is the case here. Conte & Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47. Accordingly, the Court should grant final approval of the Settlement.

**D.    The Class Was Represented by Competent Counsel.**

Class Counsel has extensive experience in employment class action law and complex wage-and-hour litigation. Ghosh Decl., ¶¶ 32-37. Lawyers *for* Justice, PC has been appointed class counsel in numerous complex wage-and-hour cases, and has recovered millions of dollars for individuals in California. Ibid. Both Parties' counsel were capable of assessing the strengths and weaknesses of the Class

---

[7] See n.3, *supra*.

Members' claims against Defendant and the benefits of the Settlement under the circumstances of the case and in the context of a private, consensual settlement agreement.

### E. There Are No Objections to the Settlement.

The Settlement has been well received by the Class – **not a single Class Member objected to the Settlement.** Supp. Simpluris Decl., ¶ 7. Specifically, no objections have been made as to the Gross Settlement Amount or requested Class Counsel Award, Service Awards, Administrative Costs, or the amount for the PAGA Settlement Amount. California courts have consistently found that a small number of objectors indicates the class' support for a settlement and strongly favors final approval. *Wershba*, *supra*, 91 Cal.App.4th at 250-51 (final approval granted despite 20 objectors); *7-Eleven Owners*, *supra*, 85 Cal.App.4th at 1152-53 (final approval granted despite 9 objectors).

Here, the lack of any objections speaks volumes about the fairness, reasonableness, and adequacy of this Settlement. Accordingly, the Settlement as a whole is presumed to be fair, reasonable, and adequate, and the Court should grant final approval of the Settlement in its entirety. *Dunk*, *supra*, 48 Cal.App.4th at 1802.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement and the amount for the PAGA Allocation, and all payments allocated and provided for by the Settlement Agreement, including and not limited to the Individual Settlement Payments to Settlement Class Members and the PAGA Allocation, in their entirety, as sought herein.

Dated: November 15, 2024               **LAWYERS *for* JUSTICE, PC**

                                       By: _/s/ Selena_____
                                       Selena Matavosian
                                       *Attorney for* Plaintiff and the Class